UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

CASEY LEE MYRIK,

               Plaintiff,

          Case No. 2:19-cv-01709-YY

     v.

          OPINION AND ORDER

P. MAYS, D. LINDHOLM, and D. PEDRO,

               Defendants.

YOU, Magistrate Judge:

    *Pro se* plaintiff Casey Myrik, an adult in custody ("AIC") at Eastern Oregon Correctional Institution ("EOCI"), has brought a civil rights action pursuant to 42 U.S.C. § 1983 against P. Mays, D. Lindholm, and D. Pedro (collectively "defendants"). Compl. I, ECF #2. This court has jurisdiction over plaintiff's claims under 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

    Defendants have filed a motion for summary judgment (ECF #19), contending this case should be dismissed for plaintiff's failure to exhaust his claims pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and also asserting they are entitled to summary

judgment on the merits.  For the reasons discussed below, defendants' motion for summary judgment is granted, and judgment shall be entered in favor of defendants.[1]

## I.       Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citing FED. R. CIV. P. 56(e)).

The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial."  *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999).  "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party."  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## II.      Exhaustion Under the PLRA

### A.       Applicable Law

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

---

[1] All parties have consented to allow a magistrate judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).  ECF #24.

prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the PLRA "in the wake of a sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). The PLRA strengthened the exhaustion requirement so that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Id*. at 85 (citation omitted). "Prisoners must now exhaust all 'available' remedies . . . even where the relief sought—monetary damages—cannot be granted by the administrative process." *Id*. The exhaustion requirement "applies to all inmate suits about prison life" that do not involve the duration of a prisoner's sentence. *Nettles v. Grounds*, 830 F.3d 922, 932 (9th Cir. 2016) (quoting *Peter v. Nussle*, 534 U.S. 516, 532 (2002)).

The PLRA's exhaustion requirement mandates "proper" exhaustion of administrative remedies. *Woodford*, 548 U.S. at 93. Proper exhaustion means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id*. at 88. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'" *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original). To be available, a remedy must be available "as a practical matter; it must be capable of use; at hand." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (quoting *Brown*, 422 F.3d at 937) (internal quotation marks omitted).

However, there are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). These circumstances emerge when: (1) the "administrative procedure . . . operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme might be so opaque that it becomes . . . incapable of use;" and (3) "prison administrators thwart inmates from taking advantage of a

grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60 (citations omitted). When one of these circumstances arises, "an inmate's duty to exhaust 'available' remedies does not come into play." *Id*. at 1859.

In *Williams v. Paramo*, 775 F.3d 1182 (9th Cir. 2015), the Ninth Circuit articulated the procedure for determining whether a prisoner exhausted available administrative remedies. First, a defendant must "prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Id*. at 1191 (citation omitted). "This burden is achieved by producing testimony from jail deputies that describe the jail's grievance procedure and provide an overview of the jail's record-keeping system." *Williams v. Gore*, No. 15-CV-654, 2017 WL 1354695, at *5 (S.D. Cal. Mar. 24, 2017) (citing *Morton v. Hall*, 599 F.3d 942, 944 (9th Cir. 2010) (affirming district court's finding that defendants satisfied their initial burden by submitting testimony of jail coordinators who declared that they reviewed records and "found no evidence that Morton had ever filed a grievance pertaining to his assault")).

Once defendants meet their initial burden, the burden shifts to plaintiff to provide evidence that the existing and generally available administrative remedies are effectively unavailable to him because they were "'ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1172). While plaintiffs have the burden of proving effective unavailability, "failure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, the "ultimate burden of proof . . . remains with the defendant." *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172).

A motion for summary judgment is the proper means to raise a prisoner's failure to exhaust administrative remedies. *Albino*, 747 F.3d at 1166. "If undisputed evidence viewed in

the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to

summary judgment under Rule 56." *Id.*

>    **B.    Analysis**

To satisfy their initial burden of proving there was an administrative remedy, defendants

have submitted the declaration of Ron Miles, the Supervising Executive Assistant to the

Superintendent of EOCI.  Miles Decl. ¶ 1, ECF #21.  In his declaration, Miles described the

grievance process at EOCI and explained that upon admission to EOCI, AICs are informed of the

grievance process during Admission and Orientation class.  *Id.* ¶ 4.  If an AIC misses this class,

makeup classes are available.  *Id.* ¶ 5. Information on the grievance process is also available in

the AIC handbook.  *Id.* ¶ 6.  Inmates may request grievance forms at any time, and those forms

include instructions for properly filing a grievance, proper subject matter for a grievance, the

timeline for filing and receiving a grievance response, the grievance appeals process, and how to

file an appeal following an adverse decision.  *Id.* ¶ 7.

Defendants also have attached exhibits pertaining to plaintiff's grievances:

(1) A December 18, 2018 Grievance Form from plaintiff stating: "[M]ultiple time's I have sent kyte's about getting moved from bunk 27A because of my cell mate, Davis" and "I want to press charges on DOC [the Department of Corrections] for The lack of doc Procedure."

(2) A January 13, 2019 Grievance Response Form to plaintiff explaining that the process for requesting a relocation to a different unit entails filling out an "incentive move request form" and that plaintiff did not qualify for a relocation because of his disciplinary record.

(3) A January 29, 2019 Grievance Appeal Form from plaintiff stating:

>    [A]fter my responce to my first grievance do not accept nor agree with any
>    way that the [correctional officers] were trying to handle this process.  I
>    want to go even further about the Process at hand on why safty/threaght,
>    couldn't handle my situation.

(4) A February 1, 2019 Returned Grievance Appeal Form stating the grievance appeal was being returned to plaintiff because he failed to include the original grievance, original attachments and staff response, and advising plaintiff he could resubmit the appeal with corrections within 14 days.

(5) An April 4, 2019 Returned Grievance Appeal Form to plaintiff informing him: "Due to your Corrected Grievance Appeal was not received by February 14, 2019 your Grievance Appeal is denied."

(6) An April 9, 2019 Grievance Appeal Form from plaintiff asking "what is taking so long to have a response conducted" regarding his request for transfer.

(7) An April 10, 2019 Return Grievance Appeal to plaintiff informing him:

> Grievances must be submitted on the departments approved grievance form.
>
> The form sent was for a Grievance Appeal not an initial Grievance.
>
> You continue to use the incorrect form. You must use CD117 (11/14) before using CD 117c (11/14) to grieve.
>
> 4/10/19-Grievance Denied due to the Initial Grievance not attached and [a] denied grievance or appeal is not subject to further review.

Decl. Aggrey, Ex. 2, ECF #20-2; *see also* Miles Decl. ¶¶ 8-13, ECF #21.

Thus, although plaintiff filed a grievance concerning the claim in this case, he did not complete the appeals process by timely filing an appeal from the denial of his grievance. Decl. Aggrey, Ex. 2, at 4, ECF #20-2; Decl. Miles ¶ 12, ECF #21. Accordingly, defendants have satisfied their initial burden of providing evidence of an existing grievance process and plaintiff's failure to exhaust an available administrative remedy.

In response, plaintiff has failed to come forward with any evidence showing "there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Williams*, 775 F.3d at 1191. Because there is no genuine issue of material fact regarding whether plaintiff properly exhausted available administrative remedies, his claims are unexhausted and must be dismissed. *See Jones v. Bock*,

549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA

and that unexhausted claims cannot be brought in court.").

## II.      The Merits

Generally, "[i]f the district court concludes that the prisoner has not exhausted

nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Wyatt v.

Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino*, 747 F.3d

1162.  However, as the time for filing grievances concerning plaintiff's claim or to file any

appeals from the denials of the grievances is long past, it would be impossible for plaintiff to

*properly* exhaust administrative remedies regarding the claim in this action.  *See Woodford,* 548

U.S. at 93-95 (holding that "proper exhaustion" under § 1997e(a) cannot be satisfied by filing an

untimely or otherwise procedurally defective administrative grievance or appeal).

Moreover, it is abundantly clear from this record that defendants are entitled to summary

judgment on the merits of plaintiff's claims.

### A.      Eighth Amendment

Defendants argue they are entitled to summary judgment because the conduct about

which plaintiff complains did not violate his constitutional rights as a matter of law.  Mot.

Summ. J. 4-7, ECF #19.

In the Complaint, plaintiff alleges:

On 12-11-18[2] I was assaulted By an inmate.  Befor I was assaulted I have asked to
be placed in a different bunk or housing unit by LT linholm an P. mays Housing
assainment officers.  I stated that me and my celly realy need to be seperated, I
was told no.  late November my cell mate attacked me leaving me harmed.
(Details) can be Conducted.  After the altercation Ive sent multiple Kytes to
safty/Throught pedro about my situation and was denied.  I then spoke to LT
Lindholm in person about my property and stated that I needed a move an

---

[2] The court assumes the date December 11, 2018 was written in error and that December 12,
2018 was the actual date of the incident.  *See* Decl. Aggrey, Ex. 1, ECF #20-1.

notifyed him I was assaulted.  I was denied.  On 12-11-18 I was struck again by
my cell mate, I unJustifiedly layed hand aggressively to deffend myself and now
have to pay 3,000. Pluss Dollers.

Compl. III, ECF #2.  Plaintiff does not cite to a particular constitutional provision, but the court

assumes that plaintiff is attempting to assert a claim under the Eighth Amendment.

### 1.    Relevant Law on Duty to Protect Under Eighth Amendment

Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from

violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation

omitted).  A prison official violates a prisoner's Eighth Amendment rights only when the claim

satisfies both an objective and subjective inquiry.  *Lopez v. Smith*, 203 F.3d 1122, 1132-33 (9th

Cir. 2000).

To satisfy the objective prong, the inmate must show that the deprivation was

"objectively, sufficiently serious."  *Farmer*, 511 U.S. at 834 (internal quotation marks omitted).

In the context of a failure to protect claim, "the inmate must show that he was incarcerated under

conditions posing a substantial risk of serious harm."  *Id.*  This requisite level of risk requires

more than "a mere suspicion that the attack will occur."  *Berg v. Kincheloe*, 794 F.2d 457, 459

(9th Cir. 1986).

To satisfy the subjective prong, an inmate must show that a prison official displayed a

"sufficiently culpable state of mind . . . of deliberate indifference to inmate health or safety."

*Farmer*, 511 U.S. at 834 (internal quotation marks omitted).  "[D]eliberate indifference entails

something more than mere negligence" but "is satisfied by something less than acts or omissions

for the very purpose of causing harm or with knowledge that harm will result."  *Id.* at 835.  A

prison official is not liable unless "the official knows of and disregards an excessive risk to

inmate health or safety," meaning the official is "both aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  It is not enough to show that a prison official should have been aware of these facts: "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.

If proof is lacking as to either prong, the court may render summary judgment in favor of the defendant without considering the other element.  *See Helling v. McKinney*, 509 U.S. 25, 35 (1993).  District courts "have the usual authority to control the order of proof, and if there is a failure of proof on the first element that it chooses to consider, it would not be an abuse of discretion to give judgment for petitioners without taking further evidence."  *Id.*

### 2.    Analysis

As to the objective component, defendants contend "plaintiff engaged in a mutual fight with his cellmate" and that "corrections officials had no record of prior assault or misconduct between plaintiff and AIC Davis, and so no information to indicate that prior to the incident, AIC Davis posed a substantial risk of harm to plaintiff."  Mot. Summ. J. 5, ECF #19; *see* Decl. Aggrey, Ex. 1, at 1, ECF #20-1; *id.*, Ex. 2, at 2, ECF #20-2.

In the Complaint and December 18, 2018 Grievance Form, plaintiff contends that AIC Davis had previously assaulted him.  Compl. III, ECF #2 ("On 12-11-18 I was struck again by my cell mate."); Aggrey Decl., Ex. 1, at 1, ECF #20-2 ("my celly had already beat me up"; it was "[t]he second time my celly sucker punched me").  But there is no evidence to support a prior assault between plaintiff and AIC Davis, much less that defendants were aware of it.  The January 11, 2019 Grievance Response Form submitted as evidence by defendants states: "[T]here is nothing noted on either you or your cellmate's misconduct screen indicating that he

assaulted you or injured you prior to the altercation between you that took place on 12/12/18."
Aggrey Decl., Ex. 2, ECF #20-2. The Disciplinary Hearing Finding of Fact, Conclusion, and
Order pertaining to the assault, also submitted by defendants, states "[Plaintiff] was involved in a
mutual assault that required staff to transport [AIC Davis] to an outside agency for medical
treatment." Aggrey Decl., Ex. 1, ECF #20-1

Plaintiff has not contradicted the foregoing with any evidence. The court provided
plaintiff with a Summary Judgment Advice Notice, which warned him of his obligation to
respond to defendants' motion with evidence. ECF #22. However, in response to defendants'
motion for summary judgment, plaintiff submitted only a one-paragraph written response with
no affidavits or declarations.[3]

Simply put, there is no evidence that defendants were on notice that AIC Davis presented
a substantial risk to plaintiff. It is unnecessary to address the subjective prong of the failure-to-
protect analysis because plaintiff has failed to establish the objective prong. Defendants are
entitled to summary judgment as a matter of law.

**B.     Section 1983 Liability**

Defendants further argue they are entitled to summary judgment because plaintiff cannot
establish § 1983 liability against any of the named defendants. Mot. Summ. J. 7-8, ECF #19.
Because there is no constitutional violation, it is not necessary to address defendants' § 1983
*respondeat superior* argument.

---

[3] The entire response is: "[A]s of rule 56 to have my case Dismissed, Ask to overrule for
evidence of x-rays. mental helth Disfunction, and rights of Household safty. my x-rays may
show im ok But have found that i can have problems with my Jaw and could require serjery, I am
scared an uncomfortable, I feel as if I should have some one represent my case for me Because I
feel wronged. I ask two have my case represented in Court for the actions of oversight for safty
within prizon. Sincerely Casey myrik." Resp. Mot. Summ. J., ECF #23.

**ORDER**

Defendants' Motion for Summary Judgment (ECF #19) is GRANTED and this case is dismissed with prejudice.

DATED  November 30, 2020.


_____
/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge